May it please the Court, Eva Davison for Plaintiff Appellant Jason Tecza. USF argues that it is under no obligation whatsoever to maintain the confidentiality of the academic accommodations that it provides to its disabled students. But at least under California jurisprudence, which governs this action, USF's position is simply not tenable. In the time available today, I plan to address two of Jason Tecza's four claims, invasion of privacy and breach of contract. But I will gladly answer any questions the Court might have. Mr. Tecza's privacy claims are grounded in USF's disclosure of two categories of information, first, academic accommodations, and second, medical information. With respect to my understanding is that there are, I mean, essentially two privacy claims, one under the California Constitution and a tort claim. Correct. Is there a difference between them of any consequence? Your Honor, it's unclear. If you look at Hill v. NCAAA, which lays out the test for constitutional privacy, it looks to the California Supreme Court looks to the common law tort as background, but says that the constitutional privacy claim is not necessarily limited in the same way. So with respect to accommodations, the viability of Tecza's privacy claims boils down to a single question, which is, were Tecza's exam accommodations a private fact? And the district court said no for the sole reason that it held that Tecza's absence from the regular exam room, was publicly observable, but the issue here is not whether Tecza's classmates might have been able to observe his absence, but whether they knew the reason for that absence, namely that he was getting an academic accommodation of some sort. And while law students typically have, I think, better things to do during an exam than take attendance, had some of his classmates observed Tecza's absence from the regular exam room, they could have ascribed it to any of a number of reasons. Now, let's suppose that there was more than one student who suffered from ADHD and needed accommodation and was offered the same accommodation that Mr. Tecza was offered. If they were placed in the same room, would USF have violated the rights of both students? I think they would have violated the rights of, to clarify. Under your argument, they would, wouldn't they? They have to provide them a separate room, lest they know about the existence of each other. I'm not sure I agree, Your Honor. I think that USF had to give appropriate confidentiality. Mr. Tecza is not asking that USF hide all accommodations. So the appropriate accommodations, then, in the hypothetical I've given you is that they can be disclosed to each other, but they can't be disclosed to anybody who's not getting those same accommodations? If it would be acceptable for the accommodation that each student needed to put them in a separate room together, then I would argue that that would be all right. I mean, presumably it wouldn't be, if people did notice this, that wouldn't be a problem either. The problem here is that you had gratuitous disclosures, disclosures that had nothing to do with actually giving the accommodation. Right. So the disclosure here is that Tecza was actually receiving an exam accommodation. But both the tort and the constitutional right of privacy have some sort of a balance in them, don't they? I mean, in terms of to whom things can be disclosed and practicalities. Yes. There are practicalities involved. There are policy considerations involved. And under California case law, privacy doesn't turn on absolute secrecy. If somebody were deaf, for example, and the way to accommodate them was to have them sit in front of the room and speak in a microphone, and presumably everybody then would know what was going on, that would not be a violation because that's the only way you can do it. Correct, Your Honor. Correct. And what we would actually propose is one way to determine if an accommodation should be kept confidential or not is to look at is some aspect of the accommodation publicly observable. If it's not. But there are physical limitations on what a university can do when it's giving an exam. I mean, unless we're going to impose an obligation on USF to give the exam at some other place, in a different building, and in a room that can't be seen by students coming or going, so that the only fact can be their absence from the room, that's the only thing that any other student could know, that's a really hard burden sometimes for a university. These guys were overseas. This was a foreign study program where they may have had, I don't know, but I have taught in such programs. I know that we had limited accommodations. There were only a certain number of places that we were allowed to go as a US university operating in a foreign country. And so that's a very difficult burden. I mean, I think the medical fact is an important one. It's a little harder for you to get to. But the fact of the accommodation just seems to me that there's some really practical constraints on what we can demand of the universities. So to clarify, Your Honor, TEXA is not asking that accommodations be provided in any different way. I mean, accommodations are what they are. What he is asking is that if an accommodation is not known to others, that it be kept confidential, so that universities not affirmatively disclose or confirm them. Go ahead. The problem here, he's not complaining about the way he was – what rooms he was sent to or whether other people saw it or any of that. He's complaining about the fact that a whole bunch of people who were not in his class and had no way of knowing about this were given a piece of paper that said what his accommodation was. Correct, Your Honor. Completely by mistake and gratuitously. Correct. That leads to another question. Does the privacy tort apply to something negligent like this? Or the – I mean, in many ways I'm more comfortable with the contract issue. On the privacy issue, the privacy tort or the constitutional tort, I mean, basically this was a big mistake. I mean, just a screw-up. Is that a privacy violation, a constitutional privacy violation? Your Honor, I think I would first clarify that this was not a one-time occurrence. Yes, the special exam sign-out sheet was incorporated into a course book, and that's one violation. But USF's professors were also publicly discussing Texas accommodations in front of other students. And I think what all of this collectively points to – But that's kind of – I mean, it was sort of out of goodwill, really. I mean, it was out of trying to get it done. And being poorly advised, presumably, about how to get it done. I mean, in a way it was negligence, too. It was negligence for the university in not telling people not to do that. But USF has an obligation under privacy law to ensure that its employees and agents are able to ensure confidentiality properly. I mean, presumably universities have many practices and policies in place to keep confidential information, such as grades or medical information or financial documentation. And all Texas is asking is that those same policies and practices be applied here. Does your accommodation point apply to your breach of contract claim as well? Did the university contract with him to keep the fact of the accommodation private or only the fact of the medical condition? Or only the fact that – Of the medical cause for the accommodation. Your Honor, we would argue that the contract terms extend to the accommodations also. Something like anything relating to or pertaining to the disability? Is that what it was? What was the language? We would argue that accommodations – What was the actual language in the contract? The actual language – Handbook. Right. So in the SDS handbook, we have information pertaining to a student's disability, and we also have records and communications concerning disabled students. And we would argue that accommodations certainly pertain to a disability, given that they are only granted to disabled students and their nature depends on the nature of the disability. And the sign-out sheet was a record concerning a disabled student. Well, but universities make other kinds of accommodations. We accommodate writers over typists. We accommodate people who now have laptops. In the old days when we used to use manual or electric typewriters, we put people in different rooms and you segregated people by room. Those kinds of accommodations were not – doesn't seem to me to be related to some kind of a – I mean, I just don't see the connection here. I see the medical problem. I don't see the accommodation problem. Your Honor, I see I have one minute remaining, so I'd like to reserve some time for that. Can this form that was revealed say it was for a disability? Your Honor, there's really no other reason that a student would be given. But what does the form say? The form says that there was a student, Jason Texa. It lists the class, the time, and then the accommodations that were granted. Do we have the form in the record? It was not attached to the complaint, Your Honor. So there is a description of the form and the information revealed within the second amended complaint, but the form itself was not attached to the complaint. And that's the case for the handbook as well. It was not incorporated by reference into the complaint, correct? Correct. There are provisions quoted, but it is not actually attached to the complaint. And if I may reserve my few remaining seconds for that. Thank you, Your Honor. Thank you. Thank you. Good morning, Judge Berzon, Judge Bybee, Judge Marshall, Michael J. Vortain for the University of San Francisco. May it please the Court. I thought it might be helpful for me to maybe answer some of the questions that you asked, counsel. First of all, Judge Berzon asked about whether there was a balancing aspect of the right of privacy. Judge Berzon also asked if the tort and the constitutional claims basically had the same principles. The cases in the briefs suggest and actually hold that they do have the same principles. In the constitutional element, it talks a little more about information gathering practices. But for purposes of this case, Your Honors, the elements are the same. Now, for the balancing test part, which the district court did not have to reach because the district court found that there was no private fact here. If you were to disagree, if the court was to disagree and move to the balancing test, one would, I think, almost certainly have to see that in implementing the obligation to deliver accommodations in the most public integrated setting possible. That's what the law requires. Well, I know, but I don't know why you need to do this in a gross way. In other words, this isn't a question of a global decision of privacy. It's a question of whether under these particular circumstances, both in terms of the nature of the disclosure and the nature of the accommodation, there was no reason it needed to be broadcast and it was broadcast. So beyond any people who would have any reason to know about it. So it seems to me that one doesn't need to go beyond that to say in general. I mean, why would we have to get to a global decision in order to decide these things? I don't think you have to because I think you can start with the fact that there was no private fact here, either as to the academic accommodation. So your position is that both in terms of the contract and breach of contract, and I guess I'd like to know after this whether you think there is a contract, but assuming there's a contract and there's a breach of contract claim or a privacy claim, if USF were to put a list on the wall for every exam saying the following people are being accommodated because they have a disability and will not be in the main hallway where everybody could see it, that would be fine? I didn't. That's not our position. Well, it must be your position. No, it must not be, Your Honor, because that would be a segregational act by the university and that could be violation of the ADA. Why is it a segregation? Well, because under the ADA, acts which could be. I'm not talking about the ADA. I'm talking about the contract and the privacy claim. Okay. What we have here. Well, I would say, I just meant to say it wouldn't be done by the university because it would be a violation of the ADA to do that. And so then why isn't the same thing true about putting a piece of paper in the middle of somebody's textbook? The reason why is because, A, it was accidental, not intentional, and the ADA. Well, I'd like to know what the relevance of that is when you're finished. Okay. But, Your Honor, you did ask the question before whether I think whether the tort of invasion of privacy requires, is negligent, is sufficient, and under California law, it requires an intentional act. Okay. There's case law in it. It's in the briefs. That's intentional act. I mean, somebody, I mean, well, maybe not. I mean, but you still haven't really answered my question in the sense that the ADA really isn't at issue here. So as far as the contract is concerned and the privacy tort, would it be okay to simply broadcast publicly everybody who is getting the accommodations? Under the contract, let me take the contract claim first, Your Honor, because you asked what the language, Judge Marshall, I believe, asked what the language of the contract was. And, yes, Your Honor, USF would agree there's an implied contract there. So to answer your other question, we're not disputing that there's a contractual obligation arising from the handbook. The question is, what is that obligation? And it is in writing, and it is actually alleged in the pleadings, which are in the excerpts of record. And the allegations quoted of the handbook are that the disability, the medical issue, is what is promised to be held private. Why does it say that? It's in the appendix, Your Honor, if I could have a minute to find it. And there is nothing. And then there's a separate section that says communications with the student shall be held confidential, quote, as appropriate, close quote. Those are the two parts. So in this case, and returning to the medical information issue, there was no medical information whatsoever disclosed. I thought the sentence said something like information pertaining to the disability. That's not what it – could you read it to me? I cannot read it to you because I just don't have it right. I have it out of the complaint. So this is page 4 of Student Rights and Responsibilities. Every qualified student with a documented disability or disabling condition has the right to appropriate confidentiality of all information pertaining to his or her disability or condition. So it doesn't say medical – it doesn't say the medical condition. That's correct, Your Honor. Just a question. I'm sorry. If counsel's sorry to interrupt, but the district court judge decided there was no contract, and so this was a 12B6. So if your position is there was an implied in fact contract, then what is your suggestion as to how this panel should decide that issue? Well, I don't think the district court said there was no contract in general. I think the district court said there was no contract promising that the fact of testing accommodations would never be disclosed. That was the – and I can find it, Your Honor. There were two district court decisions. First, Judge Walker, and then Judge Seberg, both of whom actually dealt with the contract, and neither one said that there was no contract. Both held that there was no promise to keep the fact of receiving accommodations private. Both said it was a contract to keep the underlying medical condition.   I don't think the district court said there was no contract. There's another sentence in addition to the one you read that says the University of San Francisco has the responsibility to maintain appropriate confidentiality of records and communication concerning students with disabilities or disabling conditions. Isn't that squarely covered by what happened here? Isn't what happened here squarely covered by that? I disagree, Your Honor, because the fact of receiving accommodations is publicly visible. It couldn't mean that – But there was a record concerning students with disabilities that was disclosed. There was an accidental disclosure of the fact that, and it was on a paper form, that Mr. Texa had additional time. His records of his accommodations were not disclosed. There was nothing that he had on file in the disability office. There was the information that he gets time and a half and is in a separate room. Well, I mean, as a matter of fact, according to the complaint, people had no difficulty understanding what that was. It wasn't – I mean, everybody quickly inferred what was going on. The students who saw it. One thing. I think it's a reasonable inference that students who knew that he had time and a half would assume that he received accommodations from the disability office, but they wouldn't have any basis to know, and the university never disclosed, what kind of disability he had, what medical condition he had. And many students received those exact accommodations with very visible disabilities and with invisible. But, see, that's the part of your argument that I really don't understand. Because, fine, that's another case, another time. We'll worry about it then. But his disability and his accommodation were not visible, except to those – it may be possibly a few people noticed he wasn't there. But not the people to whom these disclosures were made, at least some of them. Do you disagree as a matter of concept that a privacy claim can be made out if certain people are going to know, but it's much more broadly disseminated? Is that a privacy – how can that be a privacy claim? No, Your Honor, because that's not under California law an intimate detail of one's private life. The California cases are not. Because certain people know about it? No, not because certain people know about it. I think that's an excellent distinction there. I don't think that the judge – both judges had multiple reasonings, one of which was that people can see them going to the room. But the other reason, which they both pointed out, was there is no societal norm in California that testing accommodations are inherently a private fact. And I would argue that, and we did argue it in our brief, that if you go that far, you're going to really impair the university's ability to deliver accommodations because every professor that is walking down the hall and escorting the student to that testing room has to be very careful that nobody can overhear or watch where they're going down the hall in the separate room. I know that there's a parade of horrors there, but in fact the burdens of rendering testing accommodations a constitutional or statutorily or common law protected right of privacy is not going to pass muster. If you went to the balancing test, you would have to include, well, what are the public policies here at issue? And they are to be very liberal, open, integrated setting in delivering these accommodations. You're going to impair that if you read this contract or divine a tort here where California courts have not so found. Okay. You're out of time. Thank you for your time. Yes. Thank you so much for your excellent questions. You have about, what, a minute? He went over a minute. Thank you, Your Honor. USF acknowledges that it was under a privacy and a contract obligation to keep confidential Texas medical information. And in disclosing the accommodation, USF did also disclose medical information. That is because USF only gives accommodations to disabled students. And in addition, Texas has specifically pleaded he had no obvious physical disability and USF disclosed the nature of his accommodations, extra time and an isolated room. So at a minimum, USF disclosed that Texas suffered from one of several medical conditions that for adequate exam performance requires extra time and freedom from distraction. And that is in and of itself a violation of both privacy and contract law, as USF has admitted it was obligated to. Okay. Thank you very much. Thank you. Thank you to counsel. The case of Tesco v. University of San Francisco is submitted and we'll go on to the next case.
judges: Marshall, Berzon, Bybee